O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAMBOL INDUSTRIES, INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>M/Y HEART'S DESIRE, a 1985, 32-Foot Carver Motor Vessel, California Registration NO. CF 0179JE, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*,<br><br>              Defendant. | Case No.: 2:22-cv-03009-MEMF(MAAx)<br><br>**ORDER GRANTING CLAIMANT KATHLEEN BARROW'S MOTION TO SET ASIDE DEFAULT JUDGMENT [ECF NO. 37]** |

    Before the Court is the Motion to Set Aside Default filed by pro se Claimant Kathleen Barrow on behalf of Defendant Vessel M/Y Heart's Desire. ECF No. 37. For the reasons stated herein, the Court GRANTS the Motion.

/ / /

/ / /

1

I. **Factual Background**[1]

Plaintiff Gambol Industries, Inc. ("Gambol") is a California corporation. Compl. ¶ 2. It operates a boatyard located at 1825 Pier D Street, Long Beach, California 90802 (the "Boatyard").[2] *Id.* Defendant is M/Y Heart's Desire, a 1985, 32-foot Carver motor yacht (the "Vessel"). *Id.* ¶ 3. Its California Registration Number is CF 0179JE and its Hull Identification Number is CDRN0020H485. *Id.* The Vessel is owned by Claimant Kathleen Barrow ("Barrow"). *Id.* ¶ 4; *see generally* Motion to Set Aside Default, ECF No. 37 ("Mot." or "Motion"); Work Order Contract, ECF No. 1-1 ("Contract").

A. **The City of Long Beach's seizure of the Vessel**

On or about February 6, 2020, the Vessel was impounded by the City of Long Beach (the "City") for being unlawfully berthed at property owned by the City. *See* Mot. at 21[3]; Opposition to Motion to Set Aside Default, ECF No. 45 ("Opp'n") at 1. Barrow argues that she paid the fees necessary to have the Vessel released into her custody and subsequently entered into a contract with Gambol to have the Vessel docked at the Boatyard. Opp'n at 1; Mot. at 2. Upon docking the Vessel at the Boatyard, Barrow discovered that the Vessel had been severely damaged while in the City's custody. Mot. at 2–3. On September 1, 2020, Barrow filed a claim against the City for the damage incurred to the Vessel. *Id.* at 23. On October 16, 2020, the claim was denied. *Id.*

B. **Barrow's contract with Gambol**

On or about May 11, 2020, Gambol and Barrow entered into a Work Order Contract ("Contract") by which Gambol agreed to provide a number of services for the Vessel including hull painting and lay day services. *Id.* ¶ 6. Gambol also photographed the Vessel and removed and stored various items aboard the ship. *Id.* The Contract's terms include lay day charges which provide that Gambol

---

[1] Unless otherwise indicated, the following factual background is derived from the Complaint. ECF No. 1. ("Compl.").

[2] Counsel for Gambol advised at the hearing that it is no longer operating this boatyard.

[3] As the Motion lacks traditional page numbers, the Court's citations refer to the page numbers generated by the CM/ECF system.

> shall not invoice Owner for lay day charges, so long as "Minimum Daily Labor Limit" is satisfied. Minimum Daily Labor Limits shall be regarded as having been satisfied only if labor charges for a day equal or exceed a sum equal to $15.00 per foot multiplied by the length of the Vessel at her maximum dimension (to include any bow spirit, boarding step or other extensions) with a factor of 1.5 for multi-hulled vessels with a beam greater than 25 feet ($15.00 x 1.5 = $4.50). If for any reason the "Minimum Daily Labor Limit" is not met, lay day charges shall accrue at the rate of $7.50 per foot per day if the Vessel is located on land, $9.50 per foot per day if the Vessel is in the water, and $15.00 per foot per day if the Vessel is on the Drydock.

Contract at 5.

The final charges for the agreed upon services totaled $18,982.82. *Id.* ¶ 8. At the time of contracting, Barrow paid a deposit in the amount of $5,000, leaving an outstanding balance of $13,982.82. *Id.* Although Gambol met its requirements under the Contract, as of the time of this Order, Barrow has yet to pay the accrued balance. *See id.* ¶¶ 9–13.

Gambol—by and through its counsel—sent Barrow three letters regarding her failure to pay. *See id.* ¶¶ 9–11. The first, sent in early March 2021, informed Barrow that the total cost of its services had increased to $33,369 as the Vessel had been lying idle at the Boatyard "for months . . ., with lay day charges accruing each day." *Id.* ¶ 9. The letter provided Barrow with two options: either (1) remove the Vessel from the Boatyard within ten calendar days or (2) "tender free and clear ownership of the Vessel to [Gambol] within [ten] calendar days." *Id.* Barrow did not accept the offer. *See id.* ¶ 11.

Roughly a month later, Gambol sent a second letter reiterating the same terms as those expressed in the first. *Id.* ¶ 10; April 12, 2021 Letter, Declaration of Philip E. Weiss ("Weiss Decl."), Ex. B, ECF No. 45-2 ("Apr. 12 Ltr."). The letter further advised Barrow that Gambol was willing to "forgive all sums due and not pursue recovery of the arrearages provided you remove your vessel from the boatyard within 30 days." *Id.* Gambol also offered to "load [the Vessel] onto a trailer without charge, so she can be transported for storage on land" or "launch [the Vessel] (again at no cost to you)" to allow it to be towed "to another location for in water storage." *Id.* Barrow again failed to respond. *See id.* ¶ 11.

Finally, on April 6, 2022, Gambol sent a third letter reiterating the offers made in the second letter and advising Barrow that as the Boatyard is set to permanently close at the end of the month, the area must be fully emptied and "left completely clean and free of debris." *Id.*; April 6, 2022

3

Letter, Weiss Decl., Ex. C, ECF No. 45-2 ("Apr. 6 Ltr."). In a further attempt to reach Barrow, the letter was also sent via email to attorney Matthew Sean Harrison who, upon information and belief, represented Barrow in connection with an earlier claim she asserted against the City based on damage that had occurred to the Vessel while it had been impounded.[4] *Id.* ¶ 11. Barrow failed to respond, and the Vessel remains abandoned. *Id.*

As of April 15, 2022, Barrow has incurred $82,689.90 as a result of the Vessel's prolonged stay at the Boatyard. *Id.* ¶ 12. At the September 8, 2022 oral argument ("September 8 Hearing"), counsel for Gambol reiterated the offer to waive the outstanding balance and assist with having the Vessel towed to a location of Barrow's choice free of charge. However, Barrow stated that she prefers to not accept this offer as she plans to continue to pursue her claim against the City and ultimately have the City pay her debt to Gambol.

## II. Procedural Background

On May 4, 2022, Gambol filed a complaint against the Vessel and all of her engines, tackle, accessories, equipment, furnishings and appurtenances, *in rem* for vessel arrest, interlocutory sale, and for money damages for breach of maritime contract, vessel trespass, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and *quantum meruit*. *See generally* Compl. On May 6, 2022, upon appropriate application by Gambol, *see* ECF Nos. 6 (Ex Parte Application for Order Authorizing Issuance of a Warrant for Arrest of Defendant Vessel); 7 (Ex Parte Application for Appointment of Substitute Custodian and for Authorization for Movement of Defendant Vessel); 8 (Ex Parte Application for Issuance of Warrant *in rem* as to Defendant Vessel), the Honorable Magistrate Judge Maria A. Audero issued an Order Authorizing Arrest of the Vessel

---

[4] In her Motion to Set Aside Default, Barrow alleges that the Vessel was impounded by the San Pedro Police Department. Mot. at 1. The Court understands Barrow to be referring to officers from the Harbor Community Police Station division of the Los Angeles Police Department. *See* Harbor Community Police Station, LAPD, available at https://www.lapdonline.org/lapd-contact/south-bureau/harbor-community-police-station/ (identifying the Harbor Community Police Station as serving the communities of Harbor City, Harbor Gateway, San Pedro, Terminal Island, and Wilmington.). As a Court may, on its on motion, take judicial notice of facts not subject to reasonable dispute—including geography—the Court takes notice of the fact that San Pedro is within the City of Los Angeles and, as such, within the jurisdiction of the Los Angeles Police Department. *See* FED. R. EVID. 201(c)(1); *Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography.").

Pursuant to Supplemental Admiralty Rule C, ECF No. 16, and an Order Appointing Nielsen Beaumont Marine, Inc. as Substitute Custodian of the Vessel. ECF No. 17. On the same day, Judge Audero issued the Warrant for the Arrest of the Vessel *in rem*. ECF No. 18. Gambol appropriately published notice of the arrest warrant as is required by Local Admiralty Rule C.3. *See* ECF Nos. 20–25. The Vessel was arrested by the United States Marshals on May 19, 2022. ECF No. 26.

As Barrow failed to respond to the action, Gambol filed Request for the Clerk to enter default judgment on July 13, 2022. ECF No. 31. The Request was granted pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 33. On July 18, 2022, Gambol served notice of the entry of default on Barrow at 1175 Baker Street, Suite E19, PMB 129, Costa Mesa, California 92626 ("Baker Street Address"). ECF No. 34. On July 19, 2022, as Gambol failed to file a subsequent Motion for Default Judgment, the Court issued an Order to Show Cause ("OSC") ordering Gambol to file such a motion no later than August 19, 2022, or make an appearance at a hearing set for August 25, 2022. ECF No. 35. One day later, Gambol filed a status report regarding the OSC, stating that they intend to file a Motion for Interlocutory Vessel Sale and Credit Bid prior to filing a Motion for Default Judgment. ECF No. 36. The hearing was taken off calendar upon the Court's receipt of the Motion for Interlocutory Vessel Sale. ECF No. 44.

On August 4, 2022, Barrow, appearing *pro se*, filed the instant Motion to Set Aside Default. ECF No. 37 ("Motion" or "Mot."). Gambol filed an Opposition on August 17, 2022. ECF No. 45 ("Opp'n"). In lieu of a Reply, on August 22, 2022, Barrow filed a Notice of Deleted Documents and Lack of Due Process. ECF No. 48 ("Notice"). In this Notice, Barrow alleged that documents that she had intended to file in conjunction with her Motion were deleted or misplaced when being manually uploaded to the case docket. *See generally* Notice.

**III.   Applicable Law**

    **A. Maritime Liens**

Federal courts exercise admiralty jurisdiction under the Constitution and statute. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333(1). "A maritime lien is [a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises[.]" *In re Container Applications Int'l., Inc.*, 233 F.3d 1361, 1362 n.1 (11th Cir. 2000) (internal quotation

marks omitted) (citing *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. 1999)). *In rem* liability applies where the vessel's owner "has entrusted control to a third party." *Churchill v. F/V Fjord*, 892 F.2d 763, 767 (9th Cir. 1988). "The lien attaches simultaneously with the cause of action and adheres to the maritime property even through changes of ownership until it is either executed through the in rem legal process available in admiralty or is somehow extinguished by operation of law." 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 9:1 (6th ed. 2021) ("Admiralty & Mar. Law"). "The purpose of maritime liens is to enable a vessel to obtain supplies or repairs necessary to her continued operation by giving a temporary underlying pledge of the vessel which will hold until payment can be made or more formal security given." *Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV*, 199 F.3d 220, 223 (5th Cir. 1999) (internal quotation marks omitted) (citing *S. Coal & Coke Co. v. F. Grauds Kugniecibas ("The Everosa")*, 93 F.2d 732, 735 (1st Cir. 1937)). As such, a maritime lien is established in favor of those who provide necessaries for the benefit of a vessel. 46 U.S.C. § 31342(a) ("a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner - (1) has a maritime lien on the vessel; and (2) may bring a civil action in rem to enforce the lien.").

### B. Motion to Set Aside Default

Rule 55 of the Federal Rules of Civil Procedure provides that a "court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). When determining whether good cause exists to justify setting aside an entry of default, district courts consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party had any meritorious defense; and (3) whether reopening the default judgment would prejudice the other party. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). This test is disjunctive, meaning "that a finding that any one of these factors is true is sufficient to refuse to set aside the default." *Id.* "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

In the context of a maritime *in rem* action, Rule C(6) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Claims

("Supplemental Admiralty Rules") requires that a claimant "file a verified stated of right or interest within 14 days of the execution process or within the time that the court allows." Supplemental Admiralty Rule C(6)(a)(i)(A)–(B). This statement must include a description of the claimant's interest in the property "that supports the person's demand for its restitution or right to defend the action." *Id.* (6)(a)(ii).

**IV.  Discussion**

Barrow moves for an Order vacating the default entered against her on July 13, 2022. *See generally* Mot. to Set Aside Default. As discussed above, the Court considers three factors on a Motion to Set Aside Default: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party had any meritorious defense; and (3) whether reopening the default judgment would prejudice the other party. *Signed Personal Check No. 730*, 615 F.3d at 1091. The Court addresses each factor in turn.

**A.  The Court finds that Barrow has not engaged in culpable conduct.**

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). However, culpable conduct is "not simply nonappearance following receipt of notice of the action, but rather conduct which hinder[s] judicial proceedings as to which . . . jurisdiction [is] unchallenged." *Gregorian v. Izvestia*, 871 F.2d 1515, 1525 (9th Cir. 1989). Accordingly, "[This Circuit's] rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." *Signed Personal. Check No. 730*, 615 F.3d at 1089.

Gambol contends Barrow had "more than ample opportunity to timely file a Statement of Right or Interest" as is required by Federal Rule of Civil Procedure, Supplemental Admiralty Rule C(6)(a)(i) and an Answer or any other responsive pleading. Opp'n at 5. Gambol further argues that it made multiple attempts to provide Barrows with copies of the Summons, Complaint, and other relevant documents including service via a process server at the Baker Street Address and sending the documents via email. *Id.* at 5; Weiss Decl. ¶¶ 5–6; Weiss Decl., Ex. D.

1    In response, Barrow appears to argue that she did not receive notice through any of Gambol's attempts at service. *See generally* Mot. While it appears that Gambol properly effected service, *see* Opp'n at 5–6; Weiss Decl. ¶¶ 5–6, it also appears that Barrow may not have been able to adroitly navigate the case search system on the Public Access to Court Electronic Records ("PACER") system. *See* Notice at 1.[5]

Viewing the entire procedural history, this Court does not find that the "extreme circumstances" required to deny Barrow relief are present; to the contrary, they appear to be "everyday oversights" by a non-attorney in a very complicated area of federal law where there had already apparently been long periods of inaction.[6] *See Signed Personal Check No. 730*, 615 F.3d at 1091–92 ("In denying [the pro se claimant's] motion to set aside the default and entering default judgment in favor of the government, the district court omitted any mention of the 'extreme circumstances' requirement for judgment by default. This was no minor omission: rather, it fundamentally altered the standard, turning the court's attention to everyday oversights rather than to whether there were any extreme circumstances."). Although generally a court should not ascribe different standards to a pro se litigant versus one proceeding with counsel, this Court is mindful of the Ninth Circuit's admonition that district courts should not hold lay persons "working without the aid of an attorney[ ] to the same standards to which we hold sophisticated parties acting with the benefit of legal representation." *Id.* at 1091. And because simple carelessness is insufficient to show culpable conduct, the Court—exercising its discretion—finds little evidence that Barrow has engaged in culpable conduct. *See O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994) ("The court's discretion is especially broad where . . . it is entry of default that is being set aside . . . .")

---

[5] During the September 8 Hearing, Barrow further stated she believes that certain her inability to access PACER may be the result of efforts by Gambol's counsel to block her from the website or obstruct her access to the filings on the docket. It is unnecessary for the Court to determine the veracity of this claim at this time.

[6] During the September 8 Hearing, the parties provided the Court with the following chronology of the events underlying this action: In 2020, the City impounded the Vessel after it was found idle with a dead battery. Barrow eventually posted bond to regain possession of the Vessel. Upon regaining possession, Barrow discovered that the Vessel sustained severe damage—allegedly while in the City's custody. On May 11, 2020, Barrow entered into the Contract with Gambol to perform repairs on the Vessel. Gambol completed the repairs in May 2020. However, Barrow although paid a $5,000 deposit at the time of contracting, she failed to pay the remaining balance upon Gambol's completion of the repairs.

(citing *Mendoza v. Wight Vineyard Mgmt*, 783 F.2d 931, 945 (9th Cir. 1986) (quotation marks omitted)). Accordingly, the Court finds that this factor points towards setting aside the entry of default.

### B. It is unclear whether Barrow has a meritorious defense.

Under the second factor, a defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. *See TCI Grp.*, 244 F.3d at 700. The burden on defendant is relatively low, and courts leave questions regarding the truth of any such factual allegations for a later stage in the litigation. *See id.* (internal citations omitted).

Gambol argues that Barrow has made no showing of a defense and that, even if she had presented a defense, "no conceivable defense" exists. Opp'n at 7–8. Barrow does not appear to respond.

Section 31342 of the Commercial Instruments and Maritime Lien Act ("CIMLA") governs maritime liens. 46 U.S.C. § 31342. It provides that a lien may be placed on a vessel if "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel. . . ." 46 U.S.C. § 31342(a)(1). "Necessaries" include a variety of services to the vessel, including "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). *See also* 1 Admiralty & Mar. Law § 9:3 (providing examples of "necessaries"). It appears undisputed that the services Gambol alleges it provided—namely the hull painting and lay day docking— qualify as necessaries. Based on the arguments presented in the briefing and the representations made at the September 8 Hearing, it is unclear whether Barrow is able to present a meritorious defense. Given, however, the complexity of admiralty law and the fact that Barrow is appearing pro se, the Court finds that this factor does not weigh against denying the Motion.

### C. The Court finds that setting aside default will not prejudice Gambol.

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 701. For a delay to be prejudicial, it must "result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater

opportunity for fraud or collusion." *Id.* "[A] case should, whenever possible, [should] be decided on the merits." *Falk*, 739 F.2d at 463.

Gambol acknowledges that the risk of prejudice in the Court granting the instant Motion is low. *See* Opp'n at 9 ("[Gambol] acknowledges that setting aside the Default in this case would not result in tangible harm such as loss of evidence, increased difficulties of discovery or greater opportunity for fraud or collusion."). However, upon review of Gambol's Motion for Interlocutory Vessel Sale and Authorization for Credit Bid, ECF No. 38, the Court finds that there is a chance of prejudice born from the risk of further deterioration and subsequent depreciation of the Vessel. *See* Mot. for Interlocutory Vessel Sale and Authorization for Credit Bid at 5–6. This is mitigated by the fact that Gambol itself has waited several months before instituting this action. However, given the Ninth Circuit's guidance that judgment by default is a "drastic step," and that cases "should, whenever possible, be decided on the merits," the Court finds that this action is more appropriate for a decision on the merits. *Signed Personal Check No. 730*, 615 F.3d at 1091. As such, the Court finds that a brief delay of six weeks will not result in tangible harm.[7]

On balance, the Court—exercising its discretion— finds that the three foregoing elements point towards setting aside default. Accordingly, the Court GRANTS Barrow's Motion.

## **RESOURCES FOR SELF-REPRESENTED PARTIES**

Barrow is self-represented, that is, she does not have an attorney. As discussed at the hearing, the Court wishes to advise Barrow that the Court holds parties without an attorney to the same standards of conduct to which it holds attorneys and does not exempt them from compliance with the Federal Rules of Civil Procedure or the Local Rules. *See* C.D. Cal. L.R. 1-3 and 83-2.2.3. Appreciating the challenges which may come with self-representation, however, the Court provided guidance to Barrow at the hearing on the following resources, which she may wish to consult in litigating this case:

---

[7] Moreover, as there was a roughly two-year delay between Barrow's initial failure to pay Gambol and the commencement of this action, as well as a nearly four-month delay since the filing of the initial complaint and the present motion, the Court does not find an additional delay of six weeks to be unduly prejudicial.

- Information on the Federal Pro Se Clinic in Los Angeles, which offers on-site information and guidance to individuals who are representing themselves, can be found at https://prose.cacd.uscourts.gov/los-angeles. The clinic is open by appointment only on Mondays, Wednesdays, and Fridays from 9:30 a.m. to 12:00 p.m. and from 2:00 p.m. to 4:00 p.m. Appointments can be made via the website or by telephone at (213) 385-2977.
- General information on how parties may represent themselves in civil cases in the Central District of California can be found at https://prose.cacd.uscourts.gov/.
- While Barrow is welcome to manually file her pleadings with the Clerk of Court, she may also file her pleadings through the Central District's Electronic Document Submission Service. To opt into this service, Barrow must first file Form CV-005 and wait for the Court to grant final approval. Form CV-005 can be found at http://www.cacd.uscourts.gov/forms/application-permission-electronic-filing. Additional information regarding electronic filing can be found https://prose.cacd.uscourts.gov/faq-page#t7n279.
- Local Civil Rules for the Central District of California can be found at http://www.cacd.uscourts.gov/court-procedures/local-rules.
- Federal Rules of Civil Procedure can be found at https://www.law.cornell.edu/rules/frcp. The Federal Rules of Civil Procedure, Supplemental Admiralty Rules can be found at https://www.law.cornell.edu/rules/frcp/title_XIII.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Barrow's Motion to Set Aside Default. Barrow is hereby ORDERED to complete the following no later than September 20, 2022:

1) **File a Statement of Right or Interest.** This requires that Barrow describe her interest in the property—that is, whether she or another individual is the owner of the Vessel—and why she can appear in court to demand the return of the Vessel to her possession. *See* Supplemental Admiralty Rule C(6)(a)(i); 2 Admiralty & Mar. Law § 21:4.

2) **File an Answer**. This requires that Barrow read through Gambol's Complaint and "for each sentence in the complaint, state what [she] admit[s] and den[ies]."[8] Representing Yourself in Federal Court: A Handbook for *Pro Se* Litigants at 19, available at https://www.cand.uscourts.gov/pro-se-litigants/. *See also* Supplemental Admiralty Rule C(6)(a)(i); 2 Admiralty & Mar. Law § 21:4; Phillips & Stevenson, Rutter Group Prac. Guide, Federal Civ. Pro. Before Trial, California and Ninth Circuit Edition, ¶ 8:880 (The Rutter Group 2022).

IT IS SO ORDERED.

Dated: September 9, 2022

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[8] The Court directs Barrow to pages 19–20 of Representing Yourself in Federal Court: A Handbook for Pro Se Litigants, United States District Court, Northern District of California, available at https://www.cand.uscourts.gov/pro-se-litigants/.